UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                          Chapter 11

RITCHEY'S TRUCK REPAIR, INC.,          Case No. 8:26-bk-04988-CED

    Debtor.

_____/

RITCHEY'S TRUCK REPAIR, INC.,

    Plaintiff,

v.                                              Adv. Proc. No. 8:26-ap-00201-CED

TRUCKCO, LLC, RUSSELL P.
MATHEWS, and SIGNAL
MANAGEMENT GROUP, INC.,

    Defendants.

_____/

### DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

TruckCo, LLC ("**TruckCo**"); Russell P. Mathews ("**Mathews**"); and Signal Management Group, Inc. ("**Signal Management**" and together with TruckCo and Mathews, the "**Respondents**"), respond in opposition to the Motion for Preliminary Injunction (Adv. Doc. 2) (the "**Motion**") filed by Ritchey's Truck Repair, Inc. (the "**Debtor**"), and state as follows:

### PRELIMINARY STATEMENT

1.    The Motion asks this Court to enjoin direct, non-derivative claims against the non-debtor State Court Defendants (as defined in the Motion) until a sale of the Debtor or its assets closes under a confirmed plan. The bulk of claims filed against the State Court Defendants assert independent tort claims, non-core matters that the Respondents do not consent to this Court finally

adjudicating and that belong in the forum where they have been litigated for over a year. At bottom, the Motion is not about the Debtor. The Debtor is solvent and not in distress. The filing and this Motion are about the Debtor's owners and officers, who, dissatisfied with the trajectory of the State Court Action, placed a solvent company into bankruptcy to move the dispute to a new forum and to shield themselves from direct claims arising from their own conduct. Rather than demonstrating the identity of interests required under § 105(a), the State Court Defendants seek only to manipulate forum selection for the benefit of non-debtors, using the bankruptcy court as a vehicle to avoid litigating in state court.

2.      The Debtor seeks to enjoin actions against the State Court Defendants while no similar restrictions apply to the State Court Defendants.  This is particularly relevant as assets, including  significant assets previously represented to be owned by the Debtor, were dissipated with the benefit being obtained by the State Court Defendants.  If the injunction were granted, the non-debtors could continue to liquidate assets and further transfer assets which were sought to be recovered in the State Court Action.

3.      The injunction is also unnecessary to protect creditors.  The consummation of the Stock Purchase Agreement will result in non-insider creditors being paid in full so enjoining the Respondents' direct claims against the non-debtors is unnecessary to protect third parties.  The only genuine dispute that would remain following specific performance of the Stock Purchase Agreement is the amount, if any, that the shareholders will receive, a dispute that turns on the stock owned by the Trust, not on the estate or its creditors. While the Debtor complains about the cost of litigation, the record reflects the Debtor paid dividends in excess of $230,000 to Mr. Ritchey and Mrs. Ritchey after the State Court Action was filed as well as continuing the practice of paying numerous living expenses for the  Debtor's principals and their family members.

4934-1795-0646, v. 10

4.      The Debtor bears the burden on each element of an extraordinary remedy, and it cannot carry its burden. The Debtor cannot show that enjoining the Respondents' direct claims is necessary to administer the estate or to confirm a plan; that allowing the State Court Action to continue to be litigated in the forum previously chosen by the parties will cause  irreparable harm, when its own filings describe an estate able to pay its operating expenses and any loss of value is its insiders' own doing; and the balance of harms and the public interest run against using the estate's equitable power to shield the insiders whose conduct resulted in the prior loss of assets and any failure to pay creditors.  Neither the estate's administration nor the payment of creditors requires enjoining the State Court Action against the non-debtors. The Motion should be denied.

5.      The State Court Action has been pending for over a year. The Debtor and the State Court Defendants have had numerous adverse rulings in the State Court Action, including determinations that the Sellers breached the Stock Purchase Agreement and that the financial statements incorporated into the Stock Purchase Agreement were inaccurate as of execution. The bankruptcy filing was precipitated by a desire to avoid the State Court reaching further decisions which also would have been adverse to the Debtor and the State Court Defendants,  In addition to filing the bankruptcy case to attempt to litigate the issues in a different forum, the Debtor advances factual positions inconsistent with the proof developed in the State Court Action. The chart below sets out the Debtor's verified allegations that are inconsistent with its own records or with the facts developed in the State Court Action.

4934-1795-0646, v. 10

| The Debtor's Sworn Allegation | The Record |
|---|---|
| The Defendants "neither tendered the purchase price nor demonstrated the financial capacity to close." (Compl. ¶ 10.) | The State Court adjudicated that the Buyer was ready, willing, and able and that the Seller failed and refused to close. (Ex. 1.) |
| "Mr. Ritchey owns fifty percent of the Debtor" and "Mrs. Ritchey owns fifty percent." (Compl. ¶ 18; Ex. 20.) | The Trust owns 200 of the 266 shares; Brett Vogeler holds 66. The individuals own none directly. (Ex. 4 § 3.02(a); Ex. 7.) |
| A judgment against the non-debtors "will give rise to indemnification claims against the estate." (Compl. ¶ 35.) | The Trust indemnifies the Buyer and the Buyer indemnifies the Company. No provision runs from the Debtor to any of the non-debtors. (Ex. 4 §§ 7.01, 7.02.) |
| "[D]eclining revenues, rising operating costs, and significant liquidity strain"; the Debtor "lacks the liquidity to sustain" its defense. (Compl. ¶ 11.) | 2025 net income was $1,499,389.40; cash was $936,202.96 at year end; 2025 revenue was $4,371,833. (Ex. 8; Ex. 9; Ex. 11; Ex. 12; Ex. 19.). The Debtor transferred $230,000 to Mr. Ritchey and Mrs. Ritchey during the pendency of the litigation. (Ex. 9, RITCHEY008248.) |
| "[A]pproximately $4 million in asserted unsecured claims." (Compl. ¶ 17.) | The Debtor's own Form 204 lists non-insider unsecured claims of roughly $95,700, lists TruckCo at $0.00, and names its two state-court defense firms as its largest creditors. (Ex. 18.) |
| "[T]he Debtor cannot operate without Mr. Ritchey, Mrs. Ritchey, and Ms. James." (Compl. ¶ 33.) | Mrs. Ritchey has been retired since 2022 (Ex. 6 at 65, 66.) |

## I.  No Judgment Against a Non-Debtor Would Be a Judgment Against the Estate.

6.      The automatic stay does not reach non-debtors, as the Debtor concedes. To extend the automatic stay under Section 105(a), the movant must show unusual circumstances, meaning "such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant, and ... a judgment against the third-party defendant will, in effect, be a judgment or finding against the debtor." *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986), quoted in *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 510 (3d Cir. 1997). In the Eleventh Circuit, the identity that supports such relief is ordinarily an indemnity relationship, such

that a suit against the non-debtor is in essence a suit against the debtor or will deplete the estate. *In re Seaside Eng'g & Surveying, Inc.,* 780 F.3d 1070, 1078 (11th Cir. 2015) (Note that *Seaside* was abrogated by *Harrington v. Purdue Pharma L. P.,* 603 U.S. 204 (2024) to the extent it approved non-consensual permanent plan releases. More specifically Purdue Pharma held that the Bankruptcy Code does not authorize a bankruptcy court to approve, as part of a plan of reorganization under Chapter 11, a release and injunction that extinguishes claims against non-debtor third parties without the consent of affected claimants.). The Debtor fails to establish that relationship to any of the parties it seeks to protect. The Debtor's only bridge from non-debtor litigation to estate harm is indemnity, and that bridge does not exist. A non-debtor injunction cannot issue against a group label; the Debtor must prove the required identity and irreparable estate harm as to each non-debtor separately.

7.      The Trust owns the stock the Debtor proposes to sell; the Debtor does not. The estate reaches only property the Debtor owns. 11 U.S.C. § 541(a). The Trust holds 200 of the 266 outstanding shares. (Ex. 4 § 3.02(a); Ex. 7.) A judgment requiring the Trust to convey its shares implicates  the Trust's property, not the estate's.

8.      Bruce and Karen Ritchey are officers of the Debtor and beneficiaries of the Trust. Economic alignment is not legal identity. A judgment against them runs against their own assets, not the estate's.  As to Karen Ritchey the premise is contradicted by the Debtor's own evidence. The Debtor's prior president testified that she retired in 2022, had no day-to-day involvement, and was not getting a check. (Ex. 6 at 65, 66.) Despite retiring, Mrs. Ritchey continued to receive wages and the Debtor pays her life-insurance premiums (Ex. 9; Appendix A). A  person cannot be retired and  at the same time be essential to its operations. The Ritcheys are not sued as nominal

4934-1795-0646, v. 10

stand-ins for the Debtor. They are sued for their own alleged misrepresentations, concealment, knowledge, transfers, and post-breach conduct, which is the opposite of identity of interest.

9. Brenda James as an office manager is not the legal equivalent of the Debtor. James was added as a defendant as the recipient of a fraudulent transfer of equipment scheduled in the Agreement. (Appendix A; Ex. 3.) That is a direct claim against a transferee, not an identity of interest.

10. Ritchey's Tractor Works is a separate entity that the Debtor's principal testified he shut down in 2025. (Ex. 6 at 99:20-100:5.) It is named as a defendant because the Debtor claims that equipment listed on Exhibit D to the Stock Purchase Agreement, which the Debtor was required to transfer, belongs to Ritchey's Tractor Works and not the Debtor, a claim the Debtor's own sworn evidence refutes, as shown below. A defunct affiliate to which the Debtor claims it assigned its equipment does not supply an identity of interest.

11. The indemnity here runs the wrong way. The Debtor rests its harm theory on the assertion that a judgment against the non-debtors will give rise to indemnification claims against the estate. (Compl. ¶ 35.) Such an argument is inconsistent with the express provisions of the Stock Purchase Agreement.  The Trust indemnifies the Buyer, and the Buyer indemnifies the Debtor. (Ex. 4 §§ 7.01, 7.02.) No provision of the Stock Purchase Agreement requires the Debtor to indemnify the Trust or the individuals. If anything, the obligation runs the other way and is the Trust's alone: Section 7.01 commands that the Trust, as Seller, "shall indemnify and defend" and "shall pay and reimburse" the Buyer, in the present tense and from the Trust's own resources. (Ex. 4 §§ 7.01, 7.03.) A judgment against the non-debtors creates no claim against the estate and depletes nothing. The Debtor's own exposure is direct, not derivative: it warranted the Agreement's representations and warranties jointly and severally with the Trust and is a named defendant in its

4934-1795-0646, v. 10

own right, so its liability is primary and already within the automatic stay, not something it inherits from the non-debtors. (Ex. 4 § 3.01.) The threshold is not met, and the Court should deny the Motion on this ground alone.

12.     The Motion also seeks to enjoin actions by Mathews. Mathews is not asserting any affirmative claims in the State Court Action. He is named  only as a third-party defendant, and his sole affirmative count was dismissed. (Ex. 17.) An injunction restraining him from prosecuting that action would restrain conduct in which he does not engage.

## II.   The Debtor Cannot Satisfy the Four Factors It Invokes.

13.     The Debtor seeks an extraordinary remedy and bears the burden on every element. A Section 105(a) injunction is measured by the four-factor preliminary-injunction standard: a substantial likelihood of success, irreparable harm, a balance of harms in the movant's favor, and the public interest. *In re Olympia Holding Corp.*, 161 B.R. 524, 528 (M.D. Fla. 1993); Fed. R. Bankr. P. 7065. Because the Debtor asks this Court to reach non-debtors, it must also show the unusual circumstances described in Part I, an identity of interest or a threat to the reorganization, and those questions feed the likelihood and irreparable-harm prongs. *In re Eng'g Recruiting Experts, LLC*, 673 B.R. 32 (Bankr. M.D. Fla. 2025). Litigation expense alone does not satisfy that burden.

### A.   No irreparable harm.

14.     Irreparable harm is "the sine qua non of injunctive relief." *Siegel v. LePare*, 234 F.3d 1163, 1177 (11th Cir. 2000). Ordinary litigation expense is not the irreparable harm that supports enjoining non-debtor litigation, and in any event the harm the Debtor asserts is self-inflicted and the Debtor is solvent. The Debtor's produced balance sheet reported total assets of $1,530,056.42 against total liabilities of $736,178.43 as of July 1, 2025. (Ex. 10.) Its cash was

Page 7 of 22

$936,202.96 at December 31, 2025, the verified sum of its seven bank accounts. (Ex. 8; Ex. 9.) Its net income was $447,286.42 in the first half of 2025 and $1,052,102.98 in the second half, totaling $1,499,389.40 for the year.[1] (Ex. 11; Ex. 12.) Its gross revenue was $4,371,833 in 2025 against $4,541,590 in 2024, a change of less than four percent. (Ex. 19 § V.) A company with these profits and this cash is not unable to sustain its defense, as its verified complaint claims. (Compl. ¶ 11.)

15.     To the extent any financial pressure exists, the Debtor manufactured any strain itself. Its ledger records a $230,000 shareholder distribution on September 29, 2025, comprising $200,000 from the payroll account and $30,000 from an account titled "Excessive Savings." (Ex. 9, RITCHEY008248.) The transaction books that draw to Bruce Ritchey, not to the Trust that owns the Debtor. The principals received other benefits. (Ex. 9.) In the first quarter of 2026 the Company paid the state-court defense lawyers $93,622.16: $37,635 to Valenti Law on checks annotated to Bruce Ritchey, and $55,987.16 to Ted W. Weeks IV, P.A. (Ex. 9, RITCHEY008607 to 008957.) In the same period , the Debtor paid the principals' personal expenses, including life-insurance premiums, charitable donations, and payments on their adult son's manufactured home and lot rent. (Appendix A; Ex. 9.) The defense of the Trust and the individuals is the Trust's own obligation under Section 7.01, payable from the Trust's resources; paying it with Company funds is both a constructive distribution and a refusal to perform the indemnity the Trust owes the Buyer. (Ex. 4 §§ 7.01, 7.02.) Each dollar is a discretionary insider expense and a diminution of estate value, not irreparable harm.

---

[1] This figure is the sum of the two half-year profit-and-loss statements the Debtor produced (Exhibits 11 and 12), which derive from separate accounting files; it is offered to show the Debtor's order-of-magnitude profitability, not as a reconciled annual total. The Debtor has not produced complete or native financial records despite successive State Court orders compelling production (Exhibits 23, 24, and 25), and it has not filed its bankruptcy schedules or statement of financial affairs. The cash and revenue figures stated above are drawn from the Debtor's own productions and do not depend on this sum.

4934-1795-0646, v. 10

16.     The non-debtors can also end the litigation and its cost by closing the transaction they signed; the cost the Debtor invokes is one its own principals can eliminate by performing under the Stock Purchase Agreement.

17.     The Debtor's last theory, that the non-debtors may have no alternative but to file their own bankruptcies, which would result in the Debtor closing, is speculative and self-refuting. (Compl. ¶ 34(c).) If a transaction makes financial sense, a chapter 7 trustee would not blindly cause the Debtor to close, but would act to maximize the value of the individual debtors' estates.

**B**.     **No substantial likelihood of success.**

18.     The Debtor conditions the injunction on a future sale of the Debtor or its assets under a confirmed plan. The Debtor has not shown a substantial likelihood of confirming and closing that sale. As to a sale of the stock, it cannot: the asset identified for sale is the stock in the Debtor, and the estate does not own that stock. (Ex. 4 § 3.02(a); Ex. 7; 11 U.S.C. § 541(a).) The Debtor also cannot deliver all of the equity it proposes to sell, because 66 of the 266 shares were issued to Brett A. Vogeler and the Debtor has produced no document conveying them to the Trust. (Ex. 4 § 3.02(a).) Nor can the Debtor keep its ownership account consistent: its verified complaint and its sworn List of Equity Security Holders state that the Ritcheys each own fifty percent, while the Agreement, the produced stock book, and its own authorization to file recite that the Trust owns the stock. (Compl. ¶ 18; Ex. 20; Ex. 4 § 3.02(a); Ex. 7.) Neither the Debtor nor the Ritcheys individually can sell stock they do not own; on every version of the ownership, the shares belong to the Trust, a non-debtor. If the transaction is instead a sale of the Debtor's own assets under Section 363, it needs no injunction against litigation involving non-debtors. Either way, the injunction protects nothing.

4934-1795-0646, v. 10

19.    The Debtor also cannot identify the asset pool the injunction would preserve, and its own sworn evidence refutes its position. The Debtor has filed a verified motion in the State Court Action  asserting that the Exhibit D equipment is titled in non-debtor Ritchey's Tractor Works and was never part of the sale. (Ex. 2.) The Agreement's own text says otherwise. Section 2.02(m) required the Company to deliver at closing a bill of sale "from [the Company] to Seller" for "each asset owned by the Company and scheduled in Exhibit D," a textual admission, embedded in the Agreement at execution, that the Company owned every Exhibit D asset and that the only contemplated transfer ran from the Company to the Seller at closing. (Ex. 4 § 2.02(m).) The Debtor's own affidavits confirm the same ownership. Its accountant swore that the Corporation "has already maximized its depreciation deductions" on the Exhibit D property on the Corporation's tax returns (Ex. 5, Peaslee Aff.), and its attorney swore the property was to be transferred "from the Corporation to the Trust" at closing (Ex. 5, Putnam Aff.). The warranted balance sheet attached to the Agreement carries the same equipment as the Company's. (Ex. 4.) Taken at face value, that account defeats the Debtor's position. If the equipment was the Corporation's, to pass to the Trust only at closing, it never passed: the Seller failed and refused to close, as the State Court found, so no bill of sale was executed and the equipment remained the Corporation's. (Ex. 1.)

20.    Rather than waiting for the State Court to resolve the issue, the Debtor and the State Court Defendants engaged in property  dispositions following the breach of the Stock Purchase Agreement which resulted in the sale of property previously represented to have been owned by the Debtor. Several of the transfers occurred after the State Court enjoined any disposition of the Exhibit C and Exhibit D assets. (Appendix A; Appendix B.) TruckCo's response in the State Court Action sets out the contradiction in full. (Ex. 3.) An injunction cannot preserve, for a future sale,

4934-1795-0646, v. 10

an asset pool the Debtor cannot consistently identify. The orderly course is to fix what the estate owns before administering it, not to freeze the forum resolving that question.

21. The Motion is not a sale motion, and it does not adjudicate Section 363(f); the Court need not and should not bless any sale on this record. Even so, the premise fails on its own terms, because the Debtor could not sell the assets free and clear of TruckCo's interest under Section 363(f). The sale, which the injunction is meant to enable, cannot deliver what the Debtor promises, so the injunction should not be granted.

22. The relief is not a breathing spell. It runs until a sale closes under a confirmed plan, yet the Bankruptcy Code does not authorize a nonconsensual release of the non-debtors' direct liability, so the injunction is tied to a terminating event that cannot lawfully occur. 11 U.S.C. § 524(e). At a minimum, the state-law merits and remedy cannot be assumed away in this adversary proceeding, and Defendants have separately preserved their Section 157(b)(3) and *Stern* objections. *Stern v. Marshall*, 564 U.S. 462 (2011).

**C. The balance of harms favors Respondents.**

23. TruckCo's harm is continued delay. The State Court has adjudicated that the Buyer was ready, willing, and able and that the Seller failed and refused to close. (Ex. 1.) TruckCo's primary remedy is specific performance of a unique enterprise. The Debtor calls this a temporary stay, but its stated purpose is to estimate or liquidate that claim while it sells the enterprise, converting TruckCo's unelected specific-performance and lis-pendens-backed property claim into a money claim. (Ex. 19 §§ III, XI.). The bankruptcy was filed in an attempt to recast TruckCo's claim as damages in hopes of salvaging a recovery for the non-debtors and limiting damages asserted against non-debtors for exposure on direct fraud claims, an outcome the Debtor and the State Court Defendants have sought to  avoid since their breach. (Ex. 4 §§ 1.08, 7.04.)  On

4934-1795-0646, v. 10

materially identical facts, a court in this circuit lifted the automatic stay under Section 362(d)(1) so the buyer could pursue specific performance of a unique asset in the forum already hearing it. *In re Star Broad., Inc.*, 336 B.R. 825, 832-33 (Bankr. N.D. Fla. 2006). The Debtor asks this Court to do the opposite: not to lift the stay, which does not reach the non-debtors, but to enlarge it by injunction to shield the non-debtors who refused to close from the same specific-performance remedy. That inverts the ordinary equitable response to a seller's escape-to-bankruptcy filing.

24.     Meanwhile the injunction freezes efforts to trace  the Debtors' dissipated assets and the value that was transferred to insiders while the insiders keep control of the assets and records and attempt to  press TruckCo toward a damages-only claim against an entity already being stripped of value. The bankruptcy filing removes the litigation from the forum that  TruckCo, the Debtor, and the State Court Defendants have chosen to litigate their claims for more than a year. The injunction  has no fixed end, expiring only on an event that the Debtor may never achieve. The Debtor's proposed course of action, is improper as a proof of claim is no substitute for specific performance of the Stock Purchase Agreement, especially where the Debtor  cannot convey the Trust's stock.

25.     The irreparable harm in this record runs to TruckCo, not the Debtor: the cash the scheduled assets generated belongs to the enterprise TruckCo contracted to buy. Rather than preserving value,  the Debtor embarked on a course of conduct to close divisions, sell assets, and transfer fund to  the insiders, which are more fully discussed in Attachment A. The Debtor and the State Court Defendants have consistently refused to produce documents, including failing to comply with orders of the State Court to produce documents, to prevent further proof of the dissipation of assets and impede the recovery of assets.

4934-1795-0646, v. 10

26.     The Debtor and the State Court Defendants have avoided discovery with respect to financial records.  For the bank records spanning January 2022 through March 2026, the Debtor has produced a single, almost completely redacted statement, and only under court order; the ledgers it did produce are unlabeled and of unknown origin. (Ex. 3, Mathews Aff. ¶¶ 5, 6; Ex. 23; Ex. 24.) Plaintiff's May 6, 2026 notice of noncompliance and its May 21, 2026 motion to compel full compliance documented the Defendants' misrepresentation and concealment of their access to the legacy QuickBooks system, the books-and-records system at the center of this dispute; the native file remains outstanding, and the State Court had not yet ruled on that second discovery violation when the Debtor filed. (Ex. 13; Ex. 25.) A party that withheld its own books in defiance of two State Court orders should not be able to invoke this Court's equity to freeze litigation in the forum that is exposing the concealment. The estate's own tools, the Subchapter V trustee, the Section 341 examination, and Rule 2004, are the path to production, not an injunction shielding the insiders who have resisted it for sixteen months.

27.     The request for an injunction inverts the status quo that was being maintained by the State Court.  Such ruling included the lis pendens against the property and the prohibition on property dispositions.

**D.  The public interest favors denial.**

28.     The Debtor seeks injunctive relief even though its schedules and statement of financial affairs have not been filed in this case. However, the limited documents filed in this case reflect that the case is a two-party dispute, not a creditor reorganization. The Debtor's Form 204 lists its twenty largest non-insider unsecured claims at roughly $95,700, lists TruckCo at $0.00, and names its own state-court defense firms, Valenti Law and Ted W. Weeks IV, P.A., as its two largest creditors. (Ex. 18.) It does not list Signal as a creditor,  although it names Signal as a party

whose prosecution it seeks to enjoin. The only litigation-cost creditors the Debtor schedules are its own defense lawyers, and the fees TruckCo will recover are not payable until the State Court Action concludes. (Ex. 4 § 8.12.)  Its sworn estimate of "approximately $4 million in asserted unsecured claims" is, by the Debtor's own description, a single claim that the Debtor itself labels disputed and unliquidated, held by the party it seeks to enjoin. (Compl. ¶ 17.) The Debtor states its own purpose plainly: to "halt value-destructive litigation" and to "estimate, resolve, or liquidate the disputed claim asserted by the putative purchaser." (Ex. 19 §§ III, XI.)

29.     The timing confirms that the case is a litigation tactic to attempt to avoid rulings by the State Court and to find a new forum to attempt to litigate its claims.  The bankruptcy filing followed the breach ruling, the documented QuickBooks concealment, and the pleading of personal liability against the Ritcheys. The petition was filed days after the Trustees moved to enlarge their time to comply with discovery and before TruckCo's motion to expand the protective order. (Ex. 1; Ex. 25; Ex. 13; Ex. 14; Ex. 16; Appendix B.) The bankruptcy filing also came as two reckonings loomed in the State Court. The State Court had not yet ruled on TruckCo's pending motion to compel full compliance, which sought sanctions-backed enforcement of the second production order after the Defendants concealed their QuickBooks access and withheld the native file. And the Defendants' verified Exhibit D ownership defense had been refuted by their own affidavits and could not survive the failure-to-close ruling. The Debtor filed before it had to face either. (Ex. 1; Ex. 2; Ex. 5; Ex. 13; Ex. 24.)

30.     These are the Eleventh Circuit's bad-faith factors: the timing of the petition, the debtor's financial condition, whether the filing circumvents pending litigation, and whether it serves to shed an unprofitable contract. *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1027 (11th Cir. 1989). A bankruptcy court in this state applied them to a nearly identical maneuver, a seller's eve-

Page 14 of 22

of-trial filing to escape a buyer's specific-performance action, and found bad faith. *In re Star Broad., Inc.*, 336 B.R. 825, 830-31 (Bankr. N.D. Fla. 2006).

31.     The parties' agreement that the State Court as the appropriate forum independently weighs against the injunction. Section 8.10 of the Stock Purchase Agreement gave the parties  a choice between two forums and no others: a dispute arising out of or relating to the Agreement may be instituted in the United States District Court for the Middle District of Florida, Tampa Division, or in the courts of the State of Florida in Polk County, and each party irrevocably submitted to the exclusive jurisdiction of those courts. (Ex. 4 § 8.10.) TruckCo selected Polk County. The Debtor and the State Court Defendants also chose  that same forum by asserting their own counterclaim and third-party claims there, and the parties litigated there for more than a year, through discovery, asset-preservation orders, and the April 22 partial summary judgment. This Court should not invoke its discretionary equitable relief to override the parties' own forum selection and halt the mature proceeding now positioned to decide the remaining remedy. Litigation in the forum the parties chose, used, and irrevocably accepted is the contractual baseline, not irreparable harm. *In re Elec. Mach. Enters.,* Inc., 479 F.3d 791, 796-97 (11th Cir. 2007) (requiring enforcement of the parties' pre-petition arbitration agreement as to a non-core claim that could exist outside bankruptcy).

32.     That the adversary is pending in this District does not change the analysis. Section 8.10 designates two permissible forums, the United States District Court for the Middle District of Florida and the Polk County Circuit Court, and the parties' submission to them is, by the clause's own terms, irrevocable and exclusive. The Debtor agreed to that provision. The clause does not authorize one chosen forum to enjoin the mature litigation lawfully proceeding in the other, and neither TruckCo nor the Trust agreed to have its damages estimated or liquidated here in place of

4934-1795-0646, v. 10

the specific-performance action the chosen forum is positioned to decide. Section 105(a) does not supply the consent the contract withholds.

33.     The parties bargained that disputes arising out of the Stock Purchase Agreement would be heard in one of those two forums. An injunction from this Court halting the State Court Action would give the Debtor the opposite of that bargain, taking the contract dispute out of the forum the parties selected for it. The clause is a reason to deny the injunction, not a basis for it. Nor can the Debtor sidestep the clause by casting doubt on the Stock Purchase Agreement. The Stock Purchase Agreement has not been set aside, and the fraud questions raised on the same facts, including those underlying Signal's claim, are merits issues for the chosen forum to decide, not a basis to relocate the dispute to this Court. The buyer side seeks to enforce the Stock Purchase Agreement, not to rescind it, so the forum selection it contains binds every signatory, including the Debtor. TruckCo's recorded lis pendens, extended by the State Court's February 3, 2026 agreed order, reflects an equitable claim to the property that no sale can extinguish absent a separate proceeding under Section 363. (Ex. 26; Ex. 27.) The only injunction the parties bargained for runs the other way: the Seller stipulated that breach of its restrictive covenants would irreparably harm the Buyer and entitle the Buyer to an injunction and specific performance. (Ex. 4 § 5.01(c).) The non-debtors have meanwhile drawn salaries, benefits, and distributions from the company they refused to deliver. A Section 105 injunction shielding them from the Buyer inverts that bargain, and Section 105(a) is not a device to shield non-debtors from claims arising from their own conduct.

4934-1795-0646, v. 10

### III.   Any Relief Must Be Narrow and Conditioned.

34.     If the Court is inclined to grant any relief, it should be limited to a short, defined period, entered on party-specific findings as to each enjoined non-debtor. The relief must preserve the ability of the parties to analyze the claims. The order must compel the Debtor's production of the native QuickBooks company file with its administrator credentials and audit logs, a verified schedule identifying all assets owned by the Debtor and each of the State Court Defendants. The Debtor and each of the State Court Defendants should be prohibited from paying obligations outside the ordinary course of business, together with providing monthly reports reflecting disbursements. The injunction should also be conditioned upon posting adequate security under Federal Rule of Bankruptcy Procedure 7065. Any injunction should preserve any objections that the Respondents may assert in the bankruptcy case or this adversary proceeding. Respondents request this relief in the alternative only and do not concede that any injunction is warranted.

### Conclusion

35.     The Debtor cannot show that a judgment against any non-debtor would be a judgment against the estate, and it cannot satisfy the factors it invokes. The Motion asks the Court to halt the forum that has already adjudicated the breach in order to protect the insiders who depleted it. On undisputed facts, the State Court has already determined that a valid contract existed, that the Buyer was ready, willing, and able to close, and that the Seller failed and refused to close. (Ex. 1.) Those facts will not change in this forum, and they compel the same result. This Court will eventually confront the same record and reach the same conclusion on the failure to close, and the injunction accomplishes nothing but delay of the final adjudication the Debtor's principals have avoided for sixteen months. The filing is an abuse of the reorganization process, and an injunction shielding the non-debtors from the consequences of their own conduct furthers

4934-1795-0646, v. 10

this abuse.  The filing of the Response and any participation in this adversary proceeding do not constitute consent to entry of final orders on non-core claims and any preliminary injunction findings are non-preclusive regarding the merits of such claims. The Respondents reserve all rights, including the right to seek relief from the automatic stay under 11 U.S.C. § 362(d).The Court should deny the Motion for Preliminary Injunction.

Respectfully submitted,

/s/ *Scott A. Stichter*
Scott A. Stichter (FBN 0710679)
STICHTER, RIEDEL, BLAIN &
POSTLER, P.A.
110 E. Madison Street, Suite 200
Tampa, Florida 33602
Phone: (813) 229-0144
Email: sstichter@srbp.com
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 29, 2026, a true and correct copy of the foregoing was filed and served by the Court's CM/ECF system on all parties receiving electronic notice, including counsel for the Debtor, Amy Denton Mayer and Erin M. Hoskins, Berger Singerman LLP, 101 E. Kennedy Boulevard, Suite 1165, Tampa, Florida 33602.

/s/ *Scott A. Stichter*
Scott A. Stichter (FBN 0710679)

4934-1795-0646, v. 10

## INDEX OF EXHIBITS

*References in the text to "Exhibit C" or "Exhibit D" denote exhibits to the Stock Purchase Agreement. The exhibits attached to this Response are numbered below.*

**Exhibit 1**   Order on Plaintiff's Motion for Partial Summary Judgment (Failure to Close), entered April 22, 2026.

**Exhibit 2**   Defendants' Verified Motion for Partial Summary Judgment on Exhibit D Assets, filed March 11, 2026, with Ritchey verification.

**Exhibit 3**   Plaintiff's Response in Opposition to Defendants' Verified Motion for Partial Summary Judgment on Exhibit D Assets, filed April 20, 2026, with the Affidavit of Russell P. Mathews.

**Exhibit 4**   Stock Purchase Agreement, dated October 22, 2024.

**Exhibit 5**   Affidavits of Abel A. Putnam, Esq. and Richard Read Peaslee, CPA, filed March 11, 2026 in support of Defendants' Verified Motion for Partial Summary Judgment.

**Exhibit 6**   Excerpts of the Deposition of Bruce A. Ritchey.

**Exhibit 7**   Corporate Records of Ritchey's Truck Repair, Inc., RITCHEY001742 to 001785, including Stock Certificate No. 4 (200 shares to the Trust), Stock Certificate No. 5 (66 shares to Brett A. Vogeler), and the October 10, 2022 minutes voiding Certificate Nos. 1 through 3.

**Exhibit 8**   2025 Balance Sheet for Ritchey's Truck Repair, Inc., RITCHEY009089 to 009090.

**Exhibit 9**   General Ledger for Ritchey's Truck Repair, Inc., 2025 and first quarter 2026, RITCHEY007980 to 008957.

**Exhibit 10**   Balance Sheet for Ritchey's Truck Repair, Inc. as of July 1, 2025, RITCHEY009081 to 009088.

**Exhibit 11**   Profit and Loss Statement, January 1 to July 1, 2025, RITCHEY009119 to 009124.

**Exhibit 12**   Profit and Loss Statement, July through December 2025, RITCHEY009125 to 009127.

**Exhibit 13**   Plaintiff's Motion to Compel Full Compliance with the Discovery Orders, filed May 21, 2026.

**Exhibit 14**   Defendant Trustees' and the Ritcheys' Motion for Enlargement of Time, filed June 8, 2026.

**Exhibit 15**   Suggestion of Bankruptcy filed in the State Court Action, June 10, 2026.

**Exhibit 16**   Plaintiff's Motion for Expanded Temporary Injunction and Protective Order, filed June 10, 2026.

**Exhibit 17**   Docket of the State Court Action and the Chapter 11 case.

**Exhibit 18**   Debtor's List of Creditors Who Have the 20 Largest Unsecured Claims (Official Form 204), filed June 10, 2026 (Doc. 2).

**Exhibit 19**   Debtor's Chapter 11 Case Management Summary, filed June 10, 2026 (Doc. 8).

4934-1795-0646, v. 10

**Exhibit 20** Debtor's List of Equity Security Holders, filed June 10, 2026 (Doc. 5), declaring that Bruce Ritchey and Karen Ritchey each own fifty percent of the Debtor.

**Exhibit 21** Debtor's Declaration Under Penalty of Perjury for Non-Individual Debtors (Official Form 202), filed June 10, 2026 (Doc. 4).

**Exhibit 22** Company Documents and Agreement of Ritchey's Truck Repair, Inc., RITCHEY001662 to 001741.

**Exhibit 23** Agreed Order Granting Plaintiff's Motion to Compel Document Production and for Sanctions, entered November 4, 2025.

**Exhibit 24** Order Granting Plaintiff's Second Motion to Compel, entered April 16, 2026.

**Exhibit 25** Order Following the May 6, 2026 Hearing, deferring several motions based on recent and anticipated developments in the case.

**Exhibit 26** Notice of Lis Pendens, recorded February 11, 2025.

**Exhibit 27** Agreed Protective Order, entered February 3, 2026, extending the lis pendens and enjoining disposition of the Exhibit C and Exhibit D assets.

**Appendix A** Post-Breach Dispositions and Insider Distributions.

**Appendix B** Chronology of State Court Action Events Preceding the Petition.

4934-1795-0646, v. 10

**APPENDIX A**
**Post-Breach Dispositions and Insider Distributions**

## 1. Post-breach equipment dispositions.

| Unit | Asset | Ex. C / PIP | Sold for | Purchaser | Shortfall |
|------|-------|------------|----------|-----------|-----------|
| 121 | 1995 Mack Wrecker | $160,000 | $20,000 | Riverview Dial-A-Part, Inc. | $140,000 |
| 109 | 1992 Pete Wrecker | $100,000 | $20,000 | JR Operations LLC | $80,000 |
| 166 | 2013 Model 455 Landoll | $55,000 | $23,000 | Pagan Towing Services & Transport | $32,000 |
| 194 | 2006 Mack Daycab | $25,744 | $6,000 | Rebar Properties, LLC (landlord) | $19,744 |
| 175 | 2019 GMC | $35,100 | $20,000 | Kelley Buick GMC, Inc. | $15,100 |
| 200 | 1983 Dakota Trailer | $19,000 | $5,000 | Unknown | $14,000 |
| 203 | 2017 LDTL Equipment Trailer | $10,000 | $0.00 | Robert Thompson | $10,000 |
| 163 | 2017 GMC Sierra | $32,000 | $24,500 | Brenda James (office manager) | $7,500 |
| 116 | 1995 Model 317 Landoll | $25,000 | $20,000 | Rebar Properties, LLC (landlord) | $5,000 |
| | **Subtotal (nine units)** | **$461,844** | **$138,500** | | **$323,344** |

Three additional units were disposed by trade-in to Kelley Buick GMC, Inc. with no cash consideration disclosed: unit 159 ($34,225), unit 149 ($25,000), and unit 183 ($40,000), carrying $99,225 in value, for a total of $561,069 across all twelve transferred units.

## 2. Insider distributions.

On September 29, 2025, the Debtor distributed $230,000 to its shareholders, $200,000 from the Company's Truist payroll account and $30,000 from an account titled "Excessive Savings." (RITCHEY008248.) The Debtor reported $936,202.96 in cash at December 31, 2025. (RITCHEY009089 to 009090.)

## 3. Personal expenses paid from Company funds during the litigation.

The Company's books record the following personal payments. In 2025 the Company paid alimony of $3,235.95. (RITCHEY009126.) From January 1 to March 31, 2026 the Company paid life-insurance premiums of $2,610 for Bruce and Karen Ritchey (RITCHEY008917), charitable donations of $9,216.70 (RITCHEY008916), $2,621.16 to 21st Mortgage Corporation on the principals' son's manufactured home, at $873.72 per month (RITCHEY000478; RITCHEY008916), and $2,421.12 in lot rent to Paradise Lakes / Yes Communities for that residence, at $807.04 per month (RITCHEY000478; RITCHEY008921).

*Sources. Per-unit values are taken from Exhibit C to the Stock Purchase Agreement. PIP refers to the Property Information Package, the offering memorandum prepared by the broker, Higginbotham Auctioneers. Sale prices and purchasers are taken from the produced disposition record (RITCHEY001134), which is distinct from the source ledger.*

4934-1795-0646, v. 10

**APPENDIX B**
**Chronology of State Court Action Events Preceding the Petition**

*The petition followed the adjudication of the Debtor's breach,* the documented noncompliance with the State Court's discovery orders, and the pleading of individual liability against Bruce and Karen Ritchey, and was filed by a solvent Debtor whose only substantial disputed liability is the claim of the party it now seeks to enjoin.

| Date | Event |
|---|---|
| Nov. 4, 2025 | The State Court enters agreed orders compelling the Debtor's document production and addressing sanctions. |
| Jan. 22, 2026 | The State Court determines TruckCo's standing to enforce the Stock Purchase Agreement. |
| Feb. 3, 2026 | The State Court enters an agreed order extending the lis pendens and enjoining the Debtor and the State Court Defendants from disposing of the Exhibit C and Exhibit D assets without TruckCo's written agreement. |
| Mar. 11, 2026 | The Debtor's principals file a verified motion for partial summary judgment asserting that the Exhibit D equipment belongs to non-debtor Ritchey's Tractor Works, supported by the Putnam and Peaslee affidavits. |
| Apr. 16, 2026 | The State Court enters an order granting TruckCo's motion to compel production. |
| Apr. 20, 2026 | TruckCo files its response opposing the Exhibit D motion, with the Affidavit of Russell P. Mathews. |
| Apr. 22, 2026 | The State Court enters partial summary judgment: valid contract; TruckCo ready, willing, and able; Seller failed and refused to close. |
| May 6, 2026 | Following the May 6 hearing, the State Court enters its order, and TruckCo files notice of the Defendants' noncompliance with the discovery orders, including QuickBooks access. |
| May 8, 2026 | Signal's amended counterclaim and third-party complaint is filed, naming the Trust, Bruce, Karen, and the Company. |
| May 18, 2026 | TruckCo files its Third Amended Complaint, pleading individual liability against Bruce and Karen Ritchey. |
| May 21, 2026 | TruckCo and Signal move to compel full compliance with the discovery orders. |
| June 8, 2026 | The Trustees and the Ritcheys move to enlarge their time to respond. |
| June 10, 2026 | The Debtor files its Subchapter V petition and a Suggestion of Bankruptcy in the State Court Action; TruckCo moves the same day for an expanded temporary injunction and protective order. |
| June 12, 2026 | The Debtor files this adversary proceeding and the Motion, seeking to enjoin the non-debtor State Court Defendants. |

4934-1795-0646, v. 10